DAVID H. BERNSTEIN (CA Bar No. 336551)
**DEBEVOISE & PLIMPTON LLP**
650 California Street
San Francisco, CA 94108
Tel:   (415) 738-5700
Fax:  (415) 644-5628
Email:  dhbernstein@debevoise.com

JARED I. KAGAN (*Pro Hac Vice* Forthcoming)
PARKER C. EUDY (*Pro Hac Vice* Forthcoming)
**DEBEVOISE & PLIMPTON LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 909-9000
Facsimile: (212) 909-6836
Email:  jikagan@debevoise.com
Email:  pceudy@debevoise.com

Attorneys for Plaintiff
SNAP INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SNAP INC., <br><br> Plaintiff, <br><br> v. <br><br> DREW HIRSHFELD in his capacity as Acting Director of the United States Patent and Trademark Office, and THE UNITED STATES PATENT AND TRADEMARK OFFICE, <br><br> Defendants. | CASE NO. _____ <br><br> **COMPLAINT FOR RELIEF PURSUANT TO 15 U.S.C. § 1071** |

Plaintiff Snap Inc. ("Snap"), by its undersigned attorneys, Debevoise & Plimpton LLP, for its Complaint against Defendants Drew Hirshfeld, in his official capacity as the Acting Director of the United States Patent and Trademark Office (the "Director") and the United States Patent and Trademark Office (the "USPTO") alleges as follows:

## PRELIMINARY STATEMENT

1. In 2016, Snap introduced the SPECTACLES brand of wearable digital video cameras to be used with its famous Snapchat app. The SPECTACLES product captures images and, more recently, enables users to experience augmented reality (AR). The SPECTACLES name evokes an incongruity between an 18th century term for corrective eyewear and Snap's high-tech 21st century smart glasses. SPECTACLES also is suggestive of the camera's purpose, to capture and share unusual, notable, or entertaining scenes (*i.e.*, "spectacles") and while also encouraging users to make "spectacles" of themselves.

2. The Trademark Trial and Appeal Board ("TTAB") affirmed the USPTO's refusal to register the SPECTACLES trademark based on the remarkable position that "spectacles" is a generic term that the consuming public primarily understands to designate an entire class of goods (*i.e.*, cameras), rather than the source of those goods. But the consuming public, the media, and Snap's competitors all refer to the type of products sold under the SPECTACLES mark as "smart glasses" or "camera glasses," not "spectacles." Moreover, the media and consuming public understands that SPECTACLES is a brand of smart glasses made by Snap.

1

3.     For example, a December 8, 2021 article entitled "Snap is already delivering on the future Meta is promising" observes that "Spectacles won't be alone for long. Facebook is working on its own pair of AR smartglasses . . . .Similarly, Google acquired smartglasses maker North last year in a move that could signal another attempt at an AR wearable . . . . And Apple has long been rumored to be planning to add a pair of smartglasses to its smartwatch and earbuds wearable family . . . ."[1] Similarly, a December 2, 2021 article reviewed "The Best 8 Smart Glasses of 2021."[2] The article explains that "[s]mart glasses are set to be the next big thing in technology . . . that puts cameras and headphones into what look like normal sunglasses," and ranked SPECTACLES as the smart glasses that are "Best for Video." These articles are representative of the public's understanding that "spectacles" simply is not the word used to refer to smart glasses.

4.     Through this action, Snap appeals to this Court for a fair and full consideration of the public's understanding that SPECTACLES is not a generic term and is entitled to registration on the Principal Register.

---

[1] *See* https://qz.com/2099747/snap-is-offering-the-metaverse-while-meta-talks-about-the-future/ (last visited January 4, 2022)

[2] *See* https://www.lifewire.com/best-smart-glasses-4172796 (last visited January 4, 2022).

## PARTIES, JURISDICTION AND VENUE

5. Plaintiff Snap Inc. is a corporation organized under the laws of the state of Delaware, with its principal place of business at 3000 31st Street, Santa Monica, California 90405.

6. Defendant Drew Hirshfeld is the Acting Director of the United States Patent and Trademark Office with an address at P.O. Box 1450, Alexandria, Virginia 22313-1450.

7. Defendant United States Patent and Trademark Office is a federal agency within the United States Department of Commerce.  The agency is located at 600 Dulany Street, Alexandria, Virginia 22314.

8. This Court has jurisdiction over the subject matter of this action pursuant to Section 21(b) of the U.S. Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. 1071(b), which provides that a party dissatisfied with a final decision of the Trademark Trial and Appeal Board ("TTAB") may institute a new civil action in Federal District Court challenging such decision.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(C) because Plaintiff Snap has a principal place of business in this district.

## FACTUAL BACKGROUND

10. Snap is a camera company that believes that reinventing the camera represents its greatest opportunity to improve the way that people live and communicate.

Snap empowers people to express themselves, live in the moment, learn about the world, and have fun together.

11. Snap's flagship product, Snapchat, is a mobile application that helps people communicate visually with friends and family through short videos and images called Snaps, which they can create with the camera on their phone. In September 2016, Snap announced it was broadening its product and service offerings by selling a wearable digital video camera housed in a pair of fashionable sunglasses under the SPECTACLES brand. The SPECTACLES camera can connect seamlessly with the Snapchat app to capture photos and videos from a human perspective. Snap's SPECTACLES announcement received significant and widespread media attention, and was one of the most-watched tech product launches of the year.

12. Snap's SPECTACLES camera has been the subject of significant unsolicited media coverage and third-party recognition. Between September 24, 2016 and April 18, 2017, Snap's SPECTACLES v.1 camera product garnered over 13,000 U.S.-based media articles, news stories, and other third-party media publications. The collective circulation, website visitors, and broadcast audience for media outlets covering SPECTACLES v.1 in the U.S. resulted in an estimated one billion+ impressions. The publicity value of such media coverage was over $35 million based on the estimated price that professional media buyers would pay for that amount of exposure for that particular outlet and factors, including the average cost per impression, length of article/segment, and engagement level. Snap's SPECTACLES v.3 camera generated over 650 U.S.-based

4

COMPLAINT

media articles, news stories and other third-party publications in a span of just two days (August 13-14, 2019). The estimated collective circulation, website visitors, and broadcast audience for media outlets covering SPECTACLES v.3 in the United States was over 1.7 billion people and resulted in an estimated 34 million impressions.

13. Snap also received numerous awards for its SPECTACLES camera and promotional campaigns. At the 2017 Cannes Lions International Festival of Creativity, the prestigious gathering honoring design and product innovation, SPECTACLES and the Snapbot vending machines, from which they were sold, won three gold Lions awards, with two in Product Design and one in Design. Snap also won Design bronze, along with a silver and bronze from the Mobile jury. Furthermore, the SPECTACLES camera product won "Hardware of the Year" and Snap's video promoting SPECTACLES won "Best Startup Video" at the 2017 Crunchies Awards, hosted by TechCrunch, a leading technology news publication. More recently, the SPECTACLES product won "Best Headworn Device" at the 2021 Auggie Awards presented by AWE, the leading augmented reality industry conference.

14. Snap has built a community for SPECTACLES that generates consistent consumer engagement, with more than 200,000 followers across its various SPECTACLES social media accounts.

15. Because the SPECTACLES camera is designed to integrate with Snap's famous Snapchat app, the association of SPECTACLES with the app significantly increases the public recognition of SPECTACLES. Since its launch in 2011, the

Snapchat app has become one of the most popular smartphone applications in the world. As of Q3 2021, approximately 306 million people, on average, use the Snapchat app every day. In the United States, 90% of the 13–24-year-old population, and 75% of the 13–34-year-old population uses Snapchat. As of Q4 2020, some five billion Snaps are created each day. Snap's many millions of registered users have shared over a trillion photo and video messages to date. Snap's new generation SPECTACLES have augmented reality features, and, as of December 2021, Snapchatters use augmented reality on the Snapchat app more than 6 billion times per day, on average, and collectively have viewed Snap's Lenses (real-time augmented reality experiences) over 3.5 trillion times. According to the Apple App Store, the Snapchat app has been among the world's seven most downloaded iOS apps for the last six consecutive years, from 2016-2021, including the world's most downloaded iOS app in 2016. This level of engagement by consumers contributes to the recognition of the SPECTACLES camera product, which is integrated with the Snapchat app and allows users to take pictures and videos and upload them to the Snapchat app.

**U.S. Trademark Application History**

16.   On September 20, 2016, Snap filed a federal trademark application for SPECTACLES on an intent-to-use basis (Serial No. 87/177,292) (the "Word Mark Application") for use in connection with:

> Computer hardware; computer peripherals; wearable computer hardware; wearable computer peripherals; computer hardware and peripherals for remotely accessing, capturing, transmitting

6
COMPLAINT

> and displaying pictures, video, audio and data; downloadable computer software, namely, software for setting up, configuring, and controlling wearable computer hardware and peripherals; downloadable computer software and software applications for use in uploading, downloading, capturing, editing, storing, distributing and sharing photographic and video content and other digital data via global and local computer networks and via mobile devices; downloadable multimedia files containing digital audio and video files featuring user generated images, videos, multimedia files, and other digital data, all in the fields of entertainment, photography and online social networking; computer software for accessing and transmitting data and content among consumer electronics devices and displays.

17. On November 30, 2016, Snap amended its Word Mark Application to allege actual use.

18. On October 21, 2016, Snap filed a federal trademark application for *Spectacles* on an intent-to-use basis (Serial No. 87/211,997) (the "Stylized Mark Application" and together with the Word Mark Application, the "Applications") for use in connection with:

> Computer hardware; computer peripherals; wearable computer hardware; wearable computer peripherals; computer hardware and peripherals for remotely accessing, capturing, transmitting and displaying pictures, video, audio and data; downloadable computer software, namely, software for setting up, configuring, and controlling wearable computer hardware and peripherals; downloadable computer software and software applications for use in uploading, downloading, capturing, editing, storing, distributing and sharing photographic and video content and other digital data via global and local computer networks and via mobile devices; downloadable multimedia files containing digital audio and video files featuring user generated images, videos, multimedia files, and other digital data, all in the fields of entertainment, photography

7

and online social networking; computer software for accessing and transmitting data and content among consumer electronics devices and displays.

19. On November 30, 2016 Snap amended the Stylized Mark Application to allege actual use.

20. On December 27, 2016, the USPTO issued the first of several Office Actions refusing registration of the Applications on the ground of descriptiveness. Snap timely filed its responses. On April 22, 2019 and April 24, 2019, the USPTO issued final Office Actions maintaining the descriptiveness refusals. Snap simultaneously filed Notices of Appeal and Requests for Reconsideration of the final Office Action, which included a claim that, in the alternative, Snap's SPECTACLES mark had acquired distinctiveness under Section 2(f) of the Lanham Act.

21. The USPTO then issued a second non-final Office Action for each of the Applications on November 12, 2019 maintaining the refusal on descriptiveness grounds, and claiming Snap's Section 2(f) evidence was insufficient. These Office Actions also included an "Advisory" notice that the SPECTACLES mark "appear[ed] to be generic in connection with the identified goods and, therefore, incapable of functioning as a source-identifier for Snap's goods." Snap again timely filed its responses, this time including voluminous new evidence in support of its Section 2(f) claim of acquired distinctiveness, and also argued against the genericness "advisory" notice.

22. Six days later, on May 18, 2020, the USPTO issued non-final Office Actions, formally refusing to register the Applications on the grounds SPECTACLES is

generic, while still maintaining the descriptiveness refusal, in the alternative. The USPTO also rejected Snap's additional acquired distinctiveness evidence as insufficient. Specifically, the USPTO argued that Snap's SPECTACLES mark is so highly descriptive that Snap's evidence seeking to establish that almost four years of use of this mark as a distinctive and well-known brand was irrelevant (and would still be insufficient upon a showing of five years' use). Snap again timely filed its responses against the genericness and descriptiveness refusals and continued to submit new evidence in support of acquired distinctiveness—then based on more than four years of use.

23. On December 11, 2020, the USPTO issued another final Office Action maintaining both the descriptiveness and genericness refusals and setting a deadline of June 11, 2021 to prepare a response to the final Office Actions. Before Snap could file its responses, the TTAB, on April 23, 2021, resumed the *ex parte* appeals for the Applications setting the deadline for Snap's appeal brief to be filed on June 22, 2021.

**The TTAB Decision**

24. On November 3, 2021, following briefing, the TTAB affirmed the refusal to register the Applications on the ground that the SPECTACLES mark is generic, and, alternatively, that it is highly descriptive and has not acquired distinctiveness.

25. In affirming the refusal to register, the TTAB erred by holding that SPECTACLES is generic for cameras and related software and hardware.

26. A generic term is the common descriptive name that designates an entire class of goods or services, rather than the producer of those goods or services.

27.     SPECTACLES is not generic because it does not refer to an entire genus, class, or category of goods.  The test for determining whether a mark is generic is its primary significance to the relevant public.  The relevant category of goods described in the Applications is cameras and related software and hardware components that are commonly and generically referred to as "smart glasses" or "camera glasses," not "spectacles."  None of the specified goods in the Applications refer to any description of eyewear or other optical instrument with a lens and frame used as a viewing aid.

28.     Those in the relevant industry, competitors, the consuming public, and the news media describe the entire category or class of such goods as "cameras," "smart glasses," "camera glasses," or variations of these names.  Moreover, third parties recognize and refer to SPECTACLES as a camera product offered by Snap, not a category or class of goods.

29.     The TTAB also erred in holding that SPECTACLES is descriptive for cameras and related software and hardware.

30.     A descriptive term is one that imparts or conveys an immediate idea of the ingredients, qualities, or characteristics of the goods.  Whether a mark is descriptive is determined in relation to the goods or services for which registration is sought, not in the abstract.  In contrast, a term is suggestive when it requires imagination, mature thought, and perception to reach a conclusion as to the nature of the goods.

31.     The meaning of SPECTACLES is suggestive when considered in relation to Snap's camera product because it communicates a double entendre.  The word

"spectacles" has two commonly understood meanings, making Snap's SPECTACLES mark necessarily distinctive. The most relevant and commonly understood connotations of "spectacles" as applied to Snap's camera product are: (1) a device used to correct defects of vision or to protect the eyes that consists typically of a pair of glass or plastic lenses and the frame by which they are held in place; and (2) something exhibited to view as unusual, notable, or entertaining, especially an eye-catching or dramatic public display. Snap's SPECTACLES camera product creates a double entendre because it is, on the one hand, a high-definition digital camera housed in a plastic sunglass frame and, on the other hand, it is designed to capture and share unusual, notable, or entertaining scenes (*i.e.*, "spectacles") and while also encouraging users to make "spectacles" of themselves. This second definition of spectacles is a core marketing message for the SPECTACLES camera product, and it has been well documented by the US news media.

32. SPECTACLES also is suggestive because it is incongruous with the underlying product—a high-tech camera product. The term "spectacles" is an old-fashioned term popular in the 18th century. It is not often used today in the United States—especially by the younger demographic of consumers of Snap's SPECTACLES camera product—but when used, it is almost always meant to describe corrective eyewear. This indicates that modern day usage of "spectacles" in the United States—especially among a younger demographic of consumers who are the relevant consumers of Snap's SPECTACLES camera product—is not commonly understood to mean eyeglasses, and certainly not a wireless-enabled video camera product.

11
COMPLAINT

33. Moreover, the highly stylized Spectacles mark in its distinctive form that is neither a recognized nor ubiquitous font (it was custom crafted for Snap) creates a commercial impression separate and apart from the word portion.

34. Even if SPECTACLES is descriptive and not inherently distinctive, there is significant evidence that it has acquired secondary meaning (*i.e.*, acquired distinctiveness), for the reasons described above in paragraphs 10–15.

**FIRST CLAIM FOR RELIEF:**
**Appeal from Decision of the Trademark Trial and Appeal Board**
**Pursuant to 15 U.S.C. § 1071(b)**

35. Snap repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

36. Snap appeals the erroneous November 3, 2021 decision of the Trademark Trial and Appeal Board in the matter of *In re Snap Inc.,* Ex Parte Appeal No. 87,177,232.

37. The November 3, 2021 TTAB decision is a final decision subject to review under Section 21 of the Lanham Act, 15 U.S.C. § 1071.

38. The TTAB panel's conclusions of law are incorrect and its findings of fact are not supported by substantial evidence to warrant refusal of registration.

39. Snap has taken no appeal of the November 3, 2021 decision to the United States Court of Appeals for the Federal Circuit.

40. Snap seeks a *de novo* review of the TTAB's November 3, 2021 decision by civil action under Section 21(b) of the Lanham Act, 15 U.S.C. § 1071(b).

41. Snap seeks an order reversing the TTAB's November 3, 2021 decision on the basis that the primary significance of the term SPECTACLES as used in connection with cameras, wearable computing devices, computer hardware, and peripherals is as a trademark, that the term SPECTACLES is not generic, and that the term SPECTACLES is inherently distinctive, or in the alternative that the term SPECTACLES has gained secondary meaning pursuant to Section 2(f) of the Lanham Act, 15 U.S.C. § 1052(f).

## PRAYER FOR RELIEF

WHEREFORE, Snap requests this Court enter judgment:

1. Reversing the decision of the TTAB, dated November 3, 2021, and directing the Director forthwith to pass the Applications to publication for registration on the Principal Register; and

2. Awarding Snap such other relief as this Court may deem just and proper.

DATED: January 5, 2022             Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: */s/ David H. Bernstein*
    David H. Bernstein
    650 California Street
    San Francisco, CA 94108
    Tel.: (415) 738-5700
    Fax: (415) 644-5628
    dhbernstein@debevoise.com

| | |
|---|---|
| 1 | Jared I. Kagan |
| | (*Pro Hac Vice* forthcoming) |
| 2 | Parker C. Eudy |
| | (*Pro Hac Vice* forthcoming) |
| 3 | 919 Third Avenue |
| | New York, NY 10022 |
| 4 | Tel.: (212) 909-6000 |
| | Fax: (212) 909-6836 |

Attorneys for Plaintiff Snap Inc.

COMPLAINT