E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JASMIN YANG (Cal. Bar No. 255254)
Assistant United States Attorney
        Federal Building, Suite 7516
        300 North Los Angeles Street
        Los Angeles, California 90012
        Telephone: (213) 894-8827
        Facsimile: (213) 894-7819
        E-mail: jasmin.yang@usdoj.gov

Attorneys for Defendants Katherine K. Vidal
and the United States Patent and Trademark Office

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SNAP INC.,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>KATHERINE K. VIDAL et al.,<br><br>　　　　Defendants. | No. CV 22-00085-SK<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:　December 20, 2023<br>Hearing Time:　10:00 a.m.<br>Ctrm:　　　　　540, 5th Floor<br><br>Honorable Steve Kim<br>United States Magistrate Judge |

# TABLE OF CONTENTS

I.    Introduction ............................................................................................. 1

II.   Argument ................................................................................................ 1

    A.    The USPTO's view of the law is the view that accounts for consumer
        understanding of "spectacles." .................................................................. 1

        1.    Consumer understanding is the test. .................................................... 1

        2.    The application specimen must be considered in assessing
            consumer understanding. ..................................................................... 1

        3.    The USPTO is correct about what evidence of use of
            the word "spectacles" is competent—and not competent—to
            prove consumer understanding. ........................................................... 2

        4.    The standard of proof is preponderance of the evidence, not
            clear and convincing evidence, but the USPTO's evidence
            satisfies either standard. ...................................................................... 5

    B.    Snap has failed to raise any genuine issues of material fact,
        even conceding some critical facts. ........................................................... 7

        1.    Snap concedes the veracity of Dr. Anderson's survey finding
            that 72.9% of respondents believed "spectacles" was generic. .......... 7

        2.    Snap raises no genuine or material dispute about its public
            communications describing Spectacles as sunglasses. ....................... 8

        3.    Snap's dispute about competitor usage stands on an untimely,
            unexplored expert opinion. .................................................................. 9

        4.    Snap's additional dictionary definitions fail to create a genuine
            or material fact dispute ........................................................................ 10

        5.    Snap's witnesses fail to create a genuine or material fact
            dispute. ................................................................................................ 11

    C.    The parties' L.R. 7-3 conference comprises years of engagement
        about the same issues and is therefore compliant. ................................... 12

III.  Conclusion ............................................................................................. 16

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 1800Mattress.com IP, LLC,*
    586 F.3d 1359 (Fed. Cir. 2009) ...............................................4

*578539 B.C. Ltd. v. Korz,*
    2014 WL 12572679 (C.D. Cal. Oct. 16, 2014) ...................15

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)............................................................5

*Ballard v. Bhang Corp.,*
    2020 WL 6018939 (C.D. Cal. Sept. 25, 2020) ..................13

*Bohn v. Pharmavite, LLC,*
    2013 WL 4517173 (C.D. Cal. Feb. 5, 2013) .....................16

*Booking.com B.V. v. United States Pat. & Trademark Off.,*
    915 F.3d 171 (4th Cir. 2019) ..............................................6

*The Colusa,*
    248 F. 21 (9th Cir. 1918) .....................................................3

*Comm. for Idaho's High Desert, Inc. v. Yost,*
    92 F.3d 814 (9th Cir. 1996) ...........................................3, 4

*In re Cordua Rests., Inc.,*
    823 F.3d 594 (Fed. Cir. 2016) ........................................2, 6

*De Walshe v. Togo's Eateries, Inc.,*
    567 F. Supp. 2d 1198 (C.D. Cal. 2008) ............................14

*DiDio v. Jones,*
    2013 WL 12133906 (C.D. Cal. Oct. 31, 2013) ..................15

*Disney Enters., Inc. v. Rea,*
    940 F. Supp. 2d 288 (E.D. Va. 2013) ..................................5

*Door Sys., Inc. v. Pro-Line Door Sys., Inc.,*
    83 F.3d 169, 171 (7th Cir. 1996) .......................................11

*E. I. DuPont de Nemours & Co. v. Yoshida Intern., Inc.,*
  393 F. Supp. 502 (E.D.N.Y. 1975) ........................................................8

*Gabrielian v. Lafayette Life Ins. Co.,*
  2017 WL 10841765 (C.D. Cal. Dec. 4, 2017)....................................15

*In re Gould Paper Corp.,*
  834 F.2d 1017 (Fed. Cir. 1987) .............................................................2

*H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.,*
  782 F.2d 987 (Fed. Cir. 1986) ...............................................................3

*Kappos v. Hyatt,*
  566 U.S. 431 (2012)......................................................................5, 10

*Leitner v. Sadhana Temple of New York, Inc.,*
  2014 WL 12588645 (C.D. Cal. June 10, 2014)..................................15

*Magic Wand, Inc. v. RDB, Inc.,*
  940 F.2d 638 (Fed. Cir. 1991) ....................................................3, 4, 10

*In re Merrill Lynch, Pierce, Fenner, and Smith, Inc.,*
  828 F.2d 1567 (Fed. Cir. 1987) ....................................................3, 6, 7

*Nataly Morales v. K. Chocolatier, Inc.,*
  2022 WL 19829446 (C.D. Cal. Oct. 31, 2022) ..................................16

*Premier Nutrition, Inc. v. Organic Food Bar, Inc.,*
  No. SACV06-0827, 2008 WL 1913163 (C.D. Cal. Mar. 27, 2008),
  *aff'd,* 327 F. App'x 723 (9th Cir. 2009) ..................................3, 10, 11

*Schaffer v. Weast,*
  546 U.S. 49 (2005)..............................................................................6, 7

*Self-Realization Fellowship Church v. Ananda Church of Self-Realization,*
  59 F.3d 902 (9th Cir. 1995) ................................................................11

*Singer v. Live Nation Worldwide, Inc.,*
  2012 WL 123146 (C.D. Cal. Jan. 13, 2012) ......................................16

*Surgicenters of Am., Inc. v. Medical Dental Surgeries Co.,*
  601 F.2d 1011 (9th Cir. 1979) ..........................................................3, 5

*Unicorn Global v. Hillo America, Inc.,*
  2021 WL 1034838 (C.D. Cal. Feb. 12, 2021) ....................................15

*USPTO v. Booking.com BV,*
    140 S. Ct. 2298 (2020)............................................................................1

*WCM Indus., Inc. v. Hirshfeld,*
    No. 1:20-CV-00558, 2021 WL 1430449 (E.D. Va. Apr. 6, 2021)..................5, 6

*Wilson-Condon v. Allstate Indem. Co.,*
    2011 WL 3439272 (C.D. Cal. Aug. 4, 2011) .......................................14

**Statutes**

Lanham Act § 1(a)(1), 15 U.S.C. § 1051(a)(1)...........................................1

**Other Authorities**

37 C.F.R. §§ 2.34(a)(1)(iv) ...................................................................1

37 C.F.R. §§ 2.56(a)–(b) .....................................................................1

A. Greenbaum, J. Ginsburg & S. Weinberg, *A Proposal for Evaluating
    Genericism after "Anti-Monopoly,"* 73 Trademark Rep. 101 (1983).................5

Examination Guide 1-22: Clarification of Examination Evidentiary
    Standard for Marks Refused as Generic (May 2022) ..........................6

Garner's Modern English Usage (4th ed.) ...............................................3

2 McCarthy on Trademarks and Unfair Competition § 12:11 (5th ed.)................4

2 McCarthy on Trademarks and Unfair Competition § 12:13 (5th ed.)................9

2 McCarthy on Trademarks and Unfair Competition § 12:16 (5th ed.)................8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Summary judgment is appropriate when the moving party's view of the law is correct and no genuine issues of material fact exist. Both conditions are satisfied here: The USPTO's view of the law is the view that accounts for consumer understanding of "spectacles" in the context of smart glasses, and Snap has failed to raise any genuine issues of material fact, even conceding the veracity of the most telling evidence, the USPTO's Teflon survey.

## II.    ARGUMENT

### A.    The USPTO's view of the law is the view that accounts for consumer understanding of "spectacles."

#### 1.    Consumer understanding is the test.

Snap agrees that the relevant public's understanding—also called consumers' understanding—of the word "spectacles" in the context of smart glasses is the issue for this Court to decide. *See* Snap Br. 17; *USPTO v. Booking.com BV*, 140 S. Ct. 2298, 2304 (2020); Dang Decl. Ex. 13, p. 194 (Sowers Dep. 52:4–52:18).

#### 2.    The application specimen must be considered in assessing consumer understanding.

While Snap agrees that consumer understanding is the test, Snap omits a legally required component of the genericness analysis: the specimen that it submitted with its applications. *See* USPTO Opening Br. 3; Lanham Act § 1(a)(1), 15 U.S.C. § 1051(a)(1); 37 C.F.R. §§ 2.34(a)(1)(iv), 2.56(a)–(b). The specimen, which must depict the proposed mark as actually used in commerce on or in connection with the goods identified, *see id.*, depicts Snap's Spectacles product as eyewear that looks like ordinary sunglasses with round dark lenses, translucent stems, and inconspicuous cameras. *See* USPTO Opening Br. 1. Snap's glasses look like ordinary glasses that one might see worn anywhere.

Snap does not dispute that the identification of goods in its applications, which recites computer hardware, include the glasses depicted in the specimen. Yet Snap never

1

mentions the specimen in its brief.

Consistent with its silence about the specimen, Snap casts the identification of goods in its applications to be narrower than it is. The identification encompasses not just computer hardware but computer hardware in the form of glasses as depicted by the specimen. A genericness analysis takes into account whether the relevant public "understands the term to refer to a key aspect of [the] genus [of goods]." *In re Cordua Rests., Inc.*, 823 F.3d 594, 603–04 (Fed. Cir. 2016). Thus, the question presented in this case is whether the relevant public understands "spectacles" to be generic in the context of smart glasses including those depicted in Snap's applications. If Snap obtains federal registrations on these applications, Snap will enjoy the right to prevent others from using "spectacles" in the context of eyewear that looks like ordinary glasses, a prospect that Snap's product manager Ryan Chan underscored when he explained that "[t]he form factor of the hardware component of Spectacles resembles glasses and is meant to be used in circumstances that somebody might be wearing sunglasses for." UF10. Snap cannot offer a legally correct analysis to this Court without accounting for its use of "spectacles" with the glasses shown in the specimen. *See In re Gould Paper Corp.*, 834 F.2d 1017, 1019 (Fed. Cir. 1987) ("Gould's own submissions provided the most damaging evidence that its alleged mark [SCREENWIPE] is generic.").

> 3. The USPTO is correct about what evidence of use of the word "spectacles" is competent—and not competent—to prove consumer understanding.

The parties agree that some types of usage evidence can be relevant to whether consumers understand "spectacles" to be generic in the context of smart glasses: competitors' usage of the word; Snap's own use of the word; and usage by the media, including traditional media and social media. *Compare* USPTO Opening Br. 5–11 *with* Snap Br. 21–26. But the parties disagree about the competence of two subsets of usage evidence: evidence that consumers seldom use "spectacles" in a generic sense, and evidence that the media uses "spectacles" in a brand or trademark sense to show that

2

1   Snap allegedly appropriated an antiquated term from the public domain.

2        The USPTO's view of the law on both counts is correct.

3        First, evidence that consumers seldom use a word as a generic word is not

4   competent evidence that the word is not generic. While it is true that "any competent

5   source" can provide evidence of the relevant public's understanding of a word, not all

6   evidence is competent. *See In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d

7   1567, 1570 (Fed. Cir. 1987); *see also* Snap Br. 19–20. "Competent evidence is that

8   which the very nature of the thing to be proved requires as the fit and appropriate proof

9   in the particular case …." *The Colusa*, 248 F. 21, 23 (9th Cir. 1918) (citation and

10  quotation marks omitted). "*Competence* usually bears the general sense 'a basic or

11  minimal ability to do something.'" *Garner's Modern English Usage* (4th ed.).

12       Evidence proving the mere fact that people do not often use a word in a generic

13  sense lacks the basic ability to prove what consumers understand when the word in

14  question is put to them in the context of the relevant goods: "[J]ust because a term is not

15  the most generic term for a product does not mean it is not generic." *Premier Nutrition,*

16  *Inc. v. Organic Food Bar, Inc.*, No. SACV 06-0827 AG (RNBx), 2008 WL 1913163, at

17  *11 (C.D. Cal. Mar. 27, 2008), *aff'd,* 327 F. App'x 723 (9th Cir. 2009). That is why

18  courts require a genericness analysis to account for consumer understanding, not only

19  use: "The critical issue in genericness cases is whether members of the relevant public

20  primarily use *or understand* the term sought to be protected to refer to the genus of

21  goods or services in question." *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*,

22  782 F.2d 987, 989–990 (Fed. Cir. 1986) (emphasis added). "[H]ow a term is understood

23  by the consuming public [is] the ultimate test of whether a trademark is generic."

24  *Surgicenters of Am., Inc. v. Medical Dental Surgeries Co.*, 601 F.2d 1011, 1015 n.11

25  (9th Cir. 1979). "[T]he time-honored test for genericness" is "what do the buyers

26  understand by the word for whose use the parties are contending?" *Comm. for Idaho's*

27  *High Desert, Inc. v. Yost*, 92 F.3d 814, 821 (9th Cir. 1996) (quoting *Magic Wand, Inc. v.*

28  *RDB, Inc.*, 940 F.2d 638, 640 (Fed. Cir. 1991)) (internal quotation marks omitted). For

3

example, consumers today do not frequently use "dungarees" to refer to jeans or "bloomers" to refer to underwear, but they understand those words to be generic for those goods.

Contrary to Snap's theory, described in a footnote, the Federal Circuit's holding in *In re 1800Mattress.com* was not a one-off case limited to its facts. *See* Snap Br. 19 n.9. The proposition at issue here is precisely what the Federal Circuit spoke to when it held that "it is irrelevant whether the relevant public refers" to a genus of goods, for "the correct inquiry is whether the relevant public would understand, when hearing the term, that it refers to [the genus of goods]." *In re 1800Mattress.com IP, LLC*, 586 F.3d 1359, 1364 (Fed. Cir. 2009); *see also Comm. for Idaho's High Desert*, 92 F.3d at 821; *Magic Wand*, 940 F.2d at 640.

Second, while evidence that the media uses "spectacles" as a brand name could theoretically prove that Snap has managed to appropriate the word "spectacles" as a brand name, that phenomenon is so rare that courts and commentators have struggled to identify any case in which it has happened. Snap acknowledges that "spectacles" is a generic name for ordinary glasses, for Mr. Sowers admits that "it is, arguably, a generic term for corrective eyewear." ECF No. 69-5 (Sowers Decl. ¶ 16). But Snap contends that it appropriated "spectacles" from the public domain by using an antiquated term with new technology. *See* Snap Br. 1, 26–27. Snap's reliance on Professor Golder's evidence of media articles, social-media posts, and Amazon searches amounts to an argument that using "spectacles" to describe Snap's product causes consumers to effectively forget that the term denotes glasses, a difficult proposition for Snap to prove:

> Only in an extraordinarily rare case could a name once recognized in the past as a generic name be raised from the public domain to become a trademark by a change in consumer usage over a significant period of time. It is hard to think of even hypothetical examples, for they must be old terms which are generally unknown in current usage.

2 *McCarthy on Trademarks and Unfair Competition* § 12:11 (5th ed.). A commentator

4

has hypothesized that the now-obsolete word "bodkin," which Shakespeare used in *Hamlet* to name a kind of knife, could be a trademark today. *See* A. Greenbaum, *A Proposal for Evaluating Genericism after "Anti-Monopoly,"* 73 Trademark Rep. 101, 125 n.63 (1983).

A genuine issue of fact is one for which this Court could find for Snap after a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). Even if all of Snap's evidence were taken as true, a trial would not establish that the word "spectacles" is unknown to people today, akin to a bodkin from the 1600s, that Snap could have raised from the public domain. And, even if "spectacles" were unknown today, registration "would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." *Surgicenters*, 601 F.2d at 1016–17.

    4.    <u>The standard of proof is preponderance of the evidence, not clear and convincing evidence, but the USPTO's evidence satisfies either standard.</u>

Snap's reliance on the clear-and-convincing evidentiary standard is mistaken for two reasons. *See* Snap Br. 18.

First, when Snap relies on the clear-and-convincing standard, Snap incorrectly assumes that the USPTO bears the burden of persuasion in this civil action. Snap, the plaintiff, bears the burden of persuasion to show that it is entitled to the relief that it seeks in the complaint: reversal of the Board's decision. The USPTO does not bear the burden to re-prove the Board's decision by any evidentiary threshold. Because Snap has invoked its right to seek review in a civil action and has introduced new evidence beyond that submitted to the USPTO, this Court must make de novo findings that "take such evidence into account together with the evidence before the board." *Kappos v. Hyatt*, 566 U.S. 431, 444 (2012) (citation omitted); *WCM Indus., Inc. v. Hirshfeld*, No. 1:20-CV-00558, 2021 WL 1430449, at *1 (E.D. Va. Apr. 6, 2021). Even so, as the plaintiff and the party seeking a registration, Snap bears the burden to demonstrate that the agency erred in refusing registration. "[I]t is the plaintiff and not the USPTO that bears

5

1   the burden of proof." *Disney Enters., Inc. v. Rea*, 940 F. Supp. 2d 288, 292 (E.D. Va.

2   2013); *see also WCM Indus.*, 2021 WL 1430449, at *3; *see also Schaffer v. Weast*,

3   546 U.S. 49, 56–57 (2005).

4        Second, the standard of proof in this civil action is the ordinary preponderance-of-

5   the-evidence standard. When Snap speaks of "clear and convincing evidence," Snap is

6   referring to the evidentiary standard that an examining attorney must satisfy to refuse

7   registration during administrative proceedings, and Snap mistakenly characterizes that

8   standard by calling it clear and convincing evidence.

9        The Trademark Manual of Examining Procedure, the USPTO's guide for

10  examining attorneys, in the past instructed examining attorneys to support a genericness

11  refusal with "clear evidence." *See Examination Guide 1-22: Clarification of*

12  *Examination Evidentiary Standard for Marks Refused as Generic*, available at

13  https://www.uspto.gov/sites/default/files/documents/TM-ExamGuide-1-22.pdf. That

14  term was never intended to mean "clear and convincing evidence" but to refer to the

15  primary significance of the proposed mark to the relevant public. *Id.* Because the "clear

16  evidence" terminology created confusion, the USPTO revised the examination manual in

17  2022 to provide that a preponderance of the evidence is the standard in examination, just

18  as it is in cancellation proceedings, when a party challenges an issued registration for a

19  mark on genericness grounds. *Id.* The 2022 revisions supersede previous agency

20  guidance.

21       Snap relies on the Fourth Circuit's opinion in *Booking.com* stating "that in

22  registration proceedings, the USPTO 'always bears the burden' of establishing that a

23  proposed mark is generic." Snap Br. 15. But that statement relies on the same incorrect

24  expansion of the "clear evidence" examination standard that the USPTO excised from

25  the examination manual in 2022. *Booking.com B.V. v. United States Pat. & Trademark*

26  *Off.*, 915 F.3d 171, 179 (4th Cir. 2019) (quoting *Cordua Rests.*, 823 F.3d at 600; citing

27  *Merrill Lynch*, 828 F.2d at 1571). The Federal Circuit's decisions in *Cordua* and *Merrill*

28  *Lynch*, cited by the Fourth Circuit, merely describe the now-excised "clear evidence"

examination standard. The USPTO's clarification document, linked in the previous paragraph, explains how the mistaken expansion of *Merrill Lynch* prompted the agency to revise its guidance.

In sum, this civil action should proceed as an ordinary civil action does: The plaintiff bears the burden of persuasion to prove that it is entitled to the relief sought in the complaint by a preponderance of the evidence. *Schaffer*, 546 U.S. at 56–57. For purposes of summary judgment, however, this Court does not have to reach these issues, because the USPTO's evidence satisfies either standard of proof, regardless of who bears the burden of persuasion, in light of the undisputed evidence, including the conceded Teflon survey results.

**B.     Snap has failed to raise any genuine issues of material fact, even conceding some critical facts.**

1.     Snap concedes the veracity of Dr. Anderson's survey finding that 72.9% of respondents believed "spectacles" was generic.

As discussed in the USPTO's motion, Dr. Anderson conducted a Teflon survey finding that 72.9% of respondents understood "spectacles" to be generic. USPTO Opening Br. 14; UF23. The following is all that Snap has to say about Dr. Anderson's survey:

> Although Defendants have submitted their own survey from Dr. Anderson that purports to show that "spectacles" is generic, Dr. Anderson's survey must be weighed against Mr. Sowers' significant criticisms of it, as well as Mr. Sowers' *Thermos* survey. The weighing of this evidence must await trial and cannot be resolved on summary judgment.

Snap Br. 29.

That is not a genuine dispute of fact. If Snap felt that this Court needs to resolve something at trial about Dr. Anderson's survey, Snap would have identified what it is. Snap says nothing, merely alluding to "significant criticisms" that Mr. Sowers has about Dr. Anderson's work. *Id.*

Snap, in any event, does not dispute that Mr. Sowers admitted that Dr. Anderson's Teflon survey is the format for determining consumer understanding, nor does Snap dispute that Mr. Sowers admitted that his Thermos survey did not assess consumer understanding. *See* USPTO Opening Br. 15–16 (Sowers stating that he "was not asked to determine the primary significance for the term SPECTACLES or to provide an opinion on whether or not it is a generic term"; Sowers stating that "I think in testing genericness, if it's [consumer] understanding, it would be Teflon …."); *see also* UF23 (undisputed).

The significance of Snap's declining to criticize Dr. Anderson's Teflon survey cannot be overstated. The trademark field has long been aware that "the responses of the ["Teflon Survey"] reveal that the public is quite good at sorting out brand names from common names, and … answers the critical question left unanswered by the ambiguities inherent in [the Thermos-type] surveys—that of the *principal significance* of the … mark to the public." 2 McCarthy on Trademarks § 12:16 (quoting *E. I. DuPont de Nemours & Co. v. Yoshida Int'l, Inc.*, 393 F. Supp. 502, 527 (E.D.N.Y. 1975)). Snap has conceded the veracity of Dr. Anderson's survey by failing in its opposition brief to engage with this established survey format.

   2. <u>Snap raises no genuine or material dispute about its public communications describing Spectacles as sunglasses.</u>

The USPTO provided images of the website of Snap's official partner Lensabl, showing that Lensabl sells prescription lenses with Snap's Spectacles sunglasses. USPTO Opening Br. 6–7; UF6–7. Snap's response is that Lensabl acts independently of Snap in offering only prescription inserts; even if that were correct, that is not a material fact dispute. Snap Br. 24. The website images demonstrate that Snap wants the public to perceive its Spectacles product as something that looks like ordinary glasses and even to use Spectacles in the ways that people normally use them. *See id.* That Lensabl offers prescription lenses inserted in the Spectacles product reinforces rather than detracts from that undisputed fact.

The same is true for Snap's investor reports acknowledging that the FDA regulates Spectacles as medical devices. USPTO Opening Br. 8; UF9. Snap acknowledges that "[t]he FDA exercises regulatory oversight over all forms of sunglasses, both prescription and non-prescription, due to their role in protecting eyes from solar radiation." Snap Br. 24 n.15. There is no genuine or material fact dispute: If the FDA exercises regulatory oversight over all forms of sunglasses, including Spectacles, then Snap has admitted that Spectacles should be considered as sunglasses. *Cf.* 2 *McCarthy on Trademarks* § 12.13(2) ("A kind of estoppel arises when the proponent of trademark use is proven to have itself used the term before the public as a generic name, yet now claims that the public perceives it as a trademark.").

### 3. Snap's dispute about competitor usage stands on an untimely, unexplored expert opinion.

The USPTO submitted evidence of competitor usage of the word "spectacles" in the form of Wal-Mart and Amazon listings for smart glasses not made by Snap. USPTO Opening Br. 11–12. In response, Snap offers the declaration of its product manager Ryan Chan as the sole support for its contention that the USPTO's evidence of competitor usage in the form of Wal-Mart and Amazon listings is the product of search-engine optimization (SEO). Snap Br. 22. Mr. Chan's testimony about SEO does not comprise his personal knowledge about the Wal-Mart and Amazon listings; he is offering a purported expert opinion based on his alleged knowledge about SEO practices generally.

Snap never identified Mr. Chan as an expert witness in its disclosures, nor did Snap provide an expert report from Mr. Chan. Snap identified Mr. Chan only as a fact witness concerning Snap's Spectacles product and marketing efforts. The USPTO never had an opportunity to take discovery into Mr. Chan's qualifications to judge whether he is an expert in SEO content, nor did the USPTO have the opportunity to hire its own expert to assess Mr. Chan's opinion. Indeed, Mr. Chan's qualifications to speak to this issue are questionable given that, in his deposition, he explained that his role in researching Snap's competitors focuses on the technical capabilities of competing

products—"what a consumer is expecting a product to do," as he put it—but he said nothing about SEO content. Second Dang Decl., Ex. 2, p. 31 (33:10–19). This Court should decline to consider Mr. Chan's late expert opinion.

The issue of competitor usage, and the Amazon listing in particular, have been in issue since at least 2016, when the examining attorney used it to support her refusal of Snap's applications. Ex. 1, A25–28, A73–83, A4299–4300. Although this Court is conducting de novo review, it can consider Snap's failure to timely develop arguments during administrative proceedings: "[T]he district court may, in its discretion, consider the proceedings before and findings of the Patent Office in deciding what weight to afford an applicant's newly-admitted evidence." *Hyatt*, 566 U.S. at 445 (quotations marks and citation omitted).

Without Mr. Chan's expert declaration, Snap is left with Professor Golder's research showing that retailers such as Amazon and Walmart use categories such as "smart glasses" and "wearable technology" to describe the product category. Snap Br. 23–24. Here, Snap collides with the rule that "just because a term is not the most generic term for a product does not mean it is not generic." *Premier Nutrition, Inc.*, 2008 WL 1913163, at *11; *see also 1800Mattress.com*, 586 F.3d at 1364 ("We … disagree with [the] assertion that there can only be one generic term …. Instead, any term that the relevant public understands to refer to the genus of [goods] is generic.").

Snap has failed to raise a genuine or material fact issue about the USPTO's evidence of competitor usage.

> ### 4.    Snap's additional dictionary definitions fail to create a genuine or material fact dispute.

In addition to the previous argument, that "spectacles" is not the most generic term for smart glasses in a retail setting, Snap argues that one will not find "spectacles" in a dictionary as a definition for smart glasses, but only for an event or behavior, or corrective eyewear. Snap Br. 25. The mere fact that a word does not appear in a dictionary "cannot be the end of the analysis. No dictionary is complete or completely up

10

to date, or tracks the language of the marketplace perfectly. A number of generic terms are not found in dictionaries." *Door Sys., Inc. v. Pro-Line Door Sys., Inc.*, 83 F.3d 169, 171 (7th Cir. 1996).

In any event, Snap does not seriously dispute the USPTO's dictionary evidence. Snap does not dispute the multiple dictionary definitions of "spectacles" that encompass smart glasses. UF1–4. Nor does Snap contest the Online Cambridge Dictionary's example using "smart glasses" and "spectacles" interchangeably: "[a] pair of smart glasses will mean that you can take photos with your spectacles." UF5. That Snap has found other definitions for "spectacles" cannot create a genuine or material fact dispute in the face of all the other evidence pointing to genericness.

5.   Snap's witnesses fail to create a genuine or material fact dispute.

For its principal evidence, Snap offers declarations from two social-media influencers, Kyle Neely and Lauren Cason, who were not disclosed in Snap's Rule 26(a)(1) disclosures. These two individuals have been paid by Snap and have more knowledge about Snap's Spectacles than the typical consumer of smart glasses. *See* Snap Br. 13–15. These two individuals fail to create a genuine fact or material dispute.

Although this Court must consider the understanding of actual or potential purchasers of smart glasses, actual or potential purchasers of smart glasses are not only people who work directly with Snap and who are compensated by Snap. Courts have found the lack of fit between close associates of a trademark claimant and relevant consumers a ground for giving no weight to the declarations of the close associates: "Attestations from persons in close association and intimate contact with (the trademark claimant's) business do not reflect the views of the purchasing public." *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 910 (9th Cir. 1995) (citation and quotation marks omitted).

There is no testimony that Snap's linguist Professor Leonard could offer at trial that would change the outcome. Snap confirms that it would rely on Professor Leonard for what the USPTO observed about his testimony for purposes of this motion, that "Dr.

11

Leonard concluded that the term 'spectacles' is not commonly used by users of American English to refer to smart glasses or wearable technology that can take photographs and videos." Snap Br. 9. Again, seldom usage is not competent evidence of non-genericness. *Premier Nutrition, Inc*, 2008 WL 1913163, at *11.

Nor is there anything that Snap's marketing expert, Professor Golder, could offer at trial that would make a difference in the outcome. Snap Br. 10–11. As explained above, the word "spectacles" is not even close to an unknown word to people today. Even if Professor Golder is correct that when consumers type the word "spectacles" into an Amazon search field or that when media articles or social-media influencers use the word "spectacles" they're referring to Snap's product, those uses do not displace consumers' understanding of the term as generic.

Finally, as discussed above, Mr. Sowers agreed that Teflon is the appropriate survey format for assessing consumer understanding, not the Thermos format that he used. Snap Br. 29. Snap has failed to create a genuine fact issue by making the bare assertion that the Court should hear from Mr. Sowers in the courtroom.

All of Snap's witnesses do the same thing: They show that some number of people who are familiar with Snap's Spectacles use "spectacles" to refer to Snap's product, and that people in general do not often use "spectacles" to refer to smart glasses. That is incompetent evidence to establish lack of genericness.

Snap's lack of competent evidence underscores why the Teflon survey is the widely accepted format among courts. It's the only survey format that most closely puts the question to people in a scientific way. And Dr. Anderson is the only witness in this case who has done it.

## C. The parties' L.R. 7-3 conference comprises years of engagement about the same issues and is therefore compliant.

The parties' exchange of emails and the Zoom meeting in September 2023 marked the latest exchange during years of engagement between Snap and the USPTO about the merits of Snap's trademarks applications. The USPTO has satisfied L.R. 7-3 by

1   engaging with Snap about the merits of its case through those years.

2       Snap began debating the registrability of its applications with the USPTO when

3   the examining attorney issued her first refusal to register, in 2016; it continued through

4   Snap's appeal to the Trademark Trial and Appeal Board, which issued its decision in

5   2021; and it continued on to Snap's brief in opposition to this summary judgment

6   motion, in October 2023. *E.g.*, Ex. 1, A25–28, A73–83, A257–266, A667–671, A4298–

7   4305. The dispute has turned on the same issues: Snap maintains that "spectacles" is not

8   generic in the context of smart glasses because people who are familiar with Snap's

9   Spectacles use "spectacles" to refer to Snap's product, and because people in general

10   seldom use "spectacles" to refer to smart glasses. *Id.* The USPTO refused registration

11   because it determined that Snap's arguments failed under established trademark

12   principles. *Id.* The legal and factual issues have been consistent over the years.

13       After Snap filed this action, the USPTO agreed to stay the action for about

14   six months to see if Snap could provide the USPTO competent evidence demonstrating

15   non-genericness. *See* ECF Nos. 32, 40. At that time, the USPTO's counsel advised

16   Snap's counsel that, "[i]t seems, to us, that a valid consumer survey would likely be part

17   of" any showing required for the USPTO to reconsider its position. Second Dang Decl.,

18   Ex. 1, p. 004. Correspondence between counsel during the stay period shows that the

19   parties were debating the merits of their respective expert work and that they could not

20   come to an agreement. For example, the USPTO responded to Snap's evidence with

21   Dr. Anderson's Teflon survey and observed that, "[i]n our view, the most relevant

22   evidence of consumer understanding of the term 'spectacles' is measured by the results

23   of Dr. Anderson's validly constructed consumer survey." Second Dang Decl., Ex. 1,

24   p. 020.

25       Because the parties could not agree on a resolution, they asked the Court to lift the

26   stay. They anticipated that they would brief these issues on summary judgment, so they

27   agreed to a summary judgment briefing schedule. *See* ECF No. 41 (section IV providing

28   for agreed schedule). Snap agreed to move for more time than normally permitted under

L.R. 6-1, 7-9, and 7-10 to file opposition and reply briefs and to exceed the length limitation for briefing under L.R. 11-6.1, in light of the USPTO's anticipation that the complexity of the genericness issue would warrant more length than otherwise permitted under the local rules. *Id.* Snap's counsel recognized that the USPTO would move for summary judgment, acknowledging that "that is its prerogative." Second Dang Decl., Ex. 1, pp. 015–016. And Snap's counsel left open the possibility that Snap might cross-move, stating that "[w]hile we do not anticipate moving for summary judgment or cross moving, we need to reserve the right to cross move based on the grounds that Defendants raise in their motion." Second Dang Decl., Ex. 1, p. 015.

During their exchanges in September 2023, the parties discussed the same issues that have been in play. ECF No. 70 (Newbill Decl. Ex. 1, p. 2 (USPTO's counsel: "Snap's evidence failed to address the dispositive element of the relevant public's understanding," and the "USPTO['s] evidence does address that dispositive element and Snap's evidence fails to address it at all," and that is Defendants' basis for why they are "entitled to judgment as a matter of law."); Ex. 1, p. 7 (USPTO's counsel: "Snap has failed—indeed, has avoided—developing any evidence that is probative of the relevant public's understanding, instead limiting its proof to how frequently the relevant public uses the word 'spectacles.' … Longstanding judicial precedent and the USPTO's examination manual require that the relevant public's understanding be considered; frequency of use is insufficient."). And the parties' summary judgment briefing demonstrates that they are familiar with the issues and that they have irreconcilable views.

"Decisions from the Central District of California reflect a flexible approach to the application of Local Rule 7-3." *Gabrielian v. Lafayette Life Ins. Co.*, No. LACV 13-04694-VAP (Ex), 2017 WL 10841765, at *7 (C.D. Cal. Dec. 4, 2017). Even a moving party's reference to prior motions to dismiss has been found sufficient. *Leitner v. Sadhana Temple of New York, Inc.*, No. CV 13–07902 MMM (Ex), 2014 WL 12588645, at *4–5 (C.D. Cal. June 10, 2014); *see also 578539 B.C. Ltd. v. Korz*, No. CV 14-04375

MMM (MANx), 2014 WL 12572679, at *3-4 (C.D. Cal. Oct. 16, 2014) (finding that the parties had a meaningful conference that satisfied L.R. 7-3 because there were multiple substantive conversations about the issues, written correspondence outlining the moving party's position, and the non-moving party was put on notice of the moving party's intention to file the motion). Here, in light of this Court's flexible approach to Rule 7-3, the USPTO has satisfied the rule by its long-running, consistent engagement with Snap.

None of the cases that Snap cites are remotely factually similar or involve a situation where a party stipulated to a summary judgment briefing schedule and to exceed page limits yet still claimed an inadequate meet and confer under L.R. 7-3. *DiDio v. Jones*, No. CV 13-4949 PSG (AGRx), 2013 WL 12133906, at *4 (C.D. Cal. Oct. 31, 2013) involved the moving party's complete ignorance of L.R. 7-3. In *Unicorn Global v. Hillo America, Inc.*, No. LA CV19-03028 JAK (AFMx), 2021 WL 1034838, at *3 (C.D. Cal. Feb. 12, 2021), the Court found the parties' meet and confer inadequate because of the contentions in the plaintiff's *Daubert* motion (e.g., failure to provide the expert's CV were remedied in the defendant's opposition) and an adequate meet and confer could have resolved those issues without the necessity of filing a motion. In *Nataly Morales v. K. Chocolatier, Inc.*, No. 2:21-cv-08522-ODW (SKHx), 2022 WL 19829446, at *3 (C.D. Cal. Oct. 31, 2022), counsel admitted they had not participated in a L.R. 7-3 conference but unsuccessfully argued that their meet and confer on class discovery satisfied the meet and confer required for the class certification motion at issue. *Bohn v. Pharmavite, LLC*, No. CV 11–10430–GHK (AGRx), 2013 WL 4517173, at *1 (C.D. Cal. Feb. 5, 2013) also concerned a class certification motion where plaintiff claimed that the meet and confer conference was satisfied by vague descriptions of "engaging in dialogue" to which the non-moving party flatly stated it would oppose class certification on all fronts. *Singer v. Live Nation Worldwide, Inc.*, No. SACV 11–0427 DOC (MLGx), 2012 WL 123146, at *2 (C.D. Cal. Jan. 13, 2012) concerned the moving party's attempt to comply with the meet and confer requirement by sending a letter three days before the motion filing deadline.

Even if the conference were found noncompliant, judges of this Court regularly consider motions when the non-moving party fails to demonstrate prejudice. *Ballard v. Bhang Corp.*, No. EDCV 19-2329 JGB (KKx), 2020 WL 6018939, at *3 (C.D. Cal. Sept. 25, 2020) ("If a party does not suffer any prejudice as a result of non-compliance with Local Rule 7-3, the Court may consider the merits of the motions."); *De Walshe v. Togo's Eateries, Inc.*, 567 F. Supp. 2d 1198, 1205 (C.D. Cal. 2008) ("[T]he Court finds that any potential violation of Local Rule 7-3 did not prejudice Plaintiff and the Court exercises its discretion to evaluate Defendant's motion on its merits."); *Wilson-Condon v. Allstate Indem. Co.*, CV 11-05538 GAF (PJWx), 2011 WL 3439272, at *1 (C.D. Cal. Aug. 4, 2011) ("[Defendant] does not appear to have suffered any prejudice from Plaintiff's failure to meet and confer sufficiently in advance, and [Defendant] was able to prepare and submit an opposition. Thus, it appears that no prejudice will result if the Court considers the motion to remand on the merits notwithstanding Plaintiff's failure to comply with Local Rule 7–3."). Nothing in the USPTO's motion is a surprise or causes prejudice to Snap, for Snap was able to file a brief responding to the USPTO's motion. The parties have had a fair opportunity to present their arguments, and this motion is ready for a decision.

## III.    CONCLUSION

Snap has failed to identify a disputed fact that would make a difference in the outcome of this case, even if it were resolved in Snap's favor, under the application of a proper genericness analysis, which focuses on consumer understanding. Most striking, Snap has conceded the veracity of Dr. Anderson's Teflon survey, which found that almost three-quarters of respondents understood "spectacles" to be generic in the context of smart glasses.

This Court should grant the USPTO's motion for summary judgment and enter final judgment in favor of the USPTO.

Dated: November 14, 2023

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Section

Special Counsel:
FARHEENA Y. RASHEED
Acting Solicitor
CHRISTINA J. HIEBER
Senior Counsel for Trademark
Litigation
MAI-TRANG DANG
BENJAMIN T. HICKMAN
MARY BETH WALKER
Associate Solicitors
United States Patent and
Trademark Office
Office of the Solicitor
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-
1450
(571) 272-9035

 /s/ *Jasmin Yang*
JASMIN YANG
Assistant United States Attorney

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
SCOTT D. BOLDEN
Acting Director
LUCY GRACE D. NOYOLA
CARRIE E. ROSATO
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Telephone: (202) 514-6090
Facsimile: (202) 307-0345
Email: lucy.grace.d.noyola@usdoj.gov
carrie.e.rosato@usdoj.gov

*Attorneys for Defendants*

1

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.2</u>

2     The undersigned, counsel of record for Defendants certifies that the memorandum

3 of points and authorities is fewer than 35 pages, the limit prescribed in the Court's order

4 of November 19, 2022.

5

6 Dated: November 14, 2023                          /s/ *Jasmin Yang*
                                                   _____

7                                                  JASMIN YANG
                                                   Assistant United States Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28